ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CARLTON W. COLEMAN, SR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 103-169 |
| | ) | (Underlying CR 199-007) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Petitioner Carlton W. Coleman, Sr., an inmate currently incarcerated at the Federal Correctional Institution in Edgefield, South Carolina, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the United States of America ("the Government"). The Court also **REPORTS** and **RECOMMENDS** that Petitioner's motions for discovery and an evidentiary hearing (doc. nos. 11, 12) be **DENIED**.

### I. BACKGROUND

On February 2, 1999, a grand jury in this District returned a multi-count indictment against Petitioner and three other co-defendants which charged Petitioner with one (1) count of conspiracy to file false claims in violation of 18 U.S.C. § 286 (Count One of the indictment) and five (5) counts of filing false claims (Counts Eight, Eighteen, Nineteen,

Twenty, and Twenty-Two of the indictment) in violation of 18 U.S.C. § 287. CR. 199-007, doc. no. 1. Petitioner pled guilty to the conspiracy count (Count One) and one (1) of the false claims counts (Count Eighteen) of the indictment. CR 199-007, doc. nos. 60, 63. On October 26, 1999, after a sentencing hearing conducted on October 22, 1999, the Court sentenced Petitioner to thirty (30) months imprisonment as to both counts, to be served concurrently, followed by three (3) years of supervised release. CR 199-007, doc. no. 75. A condition of Petitioner's supervised release was that he would "not commit another federal, state, or local crime." Id. at 3.

Petitioner did not file a direct appeal, but while incarcerated filed two motions "to reduce sentence" which were both denied. CR 199-007, doc. nos. 80, 123 *denied by* doc. nos. 84, 126. Petitioner's supervised release began on July 20, 2001. CR 199-007, doc. no. 128. On August 11, 2002, the Morrow, Georgia, police arrested Petitioner on felony charges of shoplifting and possession of tools in the commission of a crime. Id. Believing Petitioner to have violated a mandatory condition of his supervised release, his probation officer petitioned the Court to issue a warrant for Petitioner's arrest and to revoke his supervised release. Id. At a hearing held on October 23, 2002, represented by retained counsel, Petitioner admitted guilt of these charges in violation of the supervised release condition. CR 199-007, doc. no. 156, Revocation Tr., pp. 2-3. Following this stipulation of guilt, the Government nonetheless presented testimony from Petitioner's probation officer and the Morrow police officer who had arrested Petitioner for the above-described offenses. Revocation Tr., pp. 3-12.

On November 1, 2002, the Court revoked Petitioner's supervised release and

2

sentenced him to a total of thirty-six (36) months imprisonment, twenty-four (24) months as to Count One and twelve (12) months as to Count Eighteen, to be served consecutively. CR 199-007, doc. no. 133. Petitioner did not appeal the revocation of his supervised release or sentence, and instead filed the instant § 2255 motion on October 27, 2003, bringing the following assertions of error. CV 103-069, doc. no. 1.

First, Petitioner alleges that the revocation hearing failed to comply with the requirements of Fed. R. Crim. P. 32.1. CV 103-069, doc. no. 6, Pet'r's Br., p. 4. Next, Petitioner argues that the Court erred by failing to inquire whether Petitioner's stipulation to the offense was made knowingly and voluntarily. Pet'r's Br., p. 6. In addition, Petitioner alleges that the evidence of the violation was insufficient. Id. at 7. Petitioner also contends that the revocation violates his plea agreement because the Court sentenced him "in excess of his original sentence" by giving him consecutive, rather than concurrent terms. Id. at 16. Finally, Petitioner maintains that his retained supervised release counsel was ineffective. Id. at 21. Petitioner argues that he is entitled to discovery and an evidentiary hearing with regard to his claims. (Doc. nos. 11, 12).

The Government has filed its response, contending that the instant petition lacks merit. CV 103-169, doc. no. 10. For the following reasons, the Court agrees and recommends that Petitioner's petition be denied without additional discovery or an evidentiary hearing.

## II. DISCUSSION

### A. No Need for Evidentiary Hearing

The Court recognizes that in the Eleventh Circuit, the general rule is "that effective

3

assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted); see also Powell v. United States, No. 03-10389, slip op. at 2-3 (11th Cir. Dec. 2, 2003) (requiring evidentiary hearing on § 2255 motion unless record "conclusively" shows that petitioner is entitled to no relief).

As described in detail below, the Court finds that Petitioner's claims are affirmatively contradicted by the record, procedurally barred, or otherwise fail as a matter of law. Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing should be **DENIED**. Doc. no. 12.

**B.    Discovery Unnecessary**

In addition, discovery is only available in § 2255 proceedings with leave of court upon a showing of good cause. Rule 6 of the Rules Governing Section 2255 Proceedings. Petitioner's instant motion (doc. no. 11) is largely another attempt to obtain a free transcript of his revocation hearing, a matter disposed of by the Court both initially and upon

4

reconsideration. See doc. nos. 5, 14. Petitioner offers nothing to alter the Court's conclusion that Petitioner has not demonstrated that a free transcript is necessary in this case. Likewise, he utterly fails to demonstrate good cause for the other discovery he seeks. Regardless, as the Court determines that the instant petition is devoid of merit, it accordingly recommends that Petitioner's motion for discovery be **DENIED**. Doc. no. 11.

### C. Procedurally Barred or Defaulted Claims

### 1. Available Claims Must be Properly Raised on Direct Appeal.

As an initial matter, it appears that all of Petitioner's claims (excepting his ineffective assistance of counsel claims[1]) are subject to dismissal because they have been procedurally defaulted. "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005)(*per curiam*)(citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004)(citation omitted).

A procedural bar or default cannot be overcome unless the § 2255 movant "can demonstrate a cause for this default and show actual prejudice suffered as a result of the alleged error." Montano, 398 F.3d at 1280. "In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a

---

[1] As discussed *infra* at Part II.D., ineffective assistance of counsel claims are excepted from the procedural default rule. See Massaro v. United States, 538 U.S. 500, 509 (2003).

5

fundamental miscarriage of justice; 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'" Id. (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

### 2. Petitioner Raised None of His Claims Prior to this Collateral Proceeding.

Prior to these proceedings, Petitioner made no attempt to challenge the revocation of his supervised release or his resulting sentence. Nor has he outlined any basis to excuse his default. Accordingly, this Court's review is limited to his ineffective assistance of counsel claims.

## D. Ineffective Assistance of Counsel Claims

First, ineffective assistance of counsel claims are excepted from the general procedural default rules explained above. Lynn, 365 F.3d at 1234 n.17 (citing Massaro v. United States, 530 U.S. 500 (2003)). However, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard. Massaro, 538 U.S. at 505. First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id. at 689; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

6

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

In addition, the Court is guided by the principle that "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Indeed, strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has

7

succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Because determining whether Petitioner suffered prejudice hinges upon the validity of the underlying claims, Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) and Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988), the Court will review the merits of the claims which form the basis of Petitioner's ineffective assistance allegations. Because Petitioner's substantive claims lack merit, he has not shown any prejudice and the Court recommends that his petition be denied.

### 1. Failure to Comply with Fed. R. Crim. P. 32.1

First, Petitioner contends that his supervised release revocation hearing did not comply with Fed. R. Crim. P. 32.1. Rule 32.1 provides that, unless waived, a person facing revocation of his supervised release is entitled to: 1) written notice of the alleged violation, 2) disclosure of the evidence against him, 3) an opportunity to appear, present evidence, and question any adverse witness, and 4) notice of his right to retain counsel or to appointed counsel if he cannot obtain counsel. See Fed. R. Crim P. 32.1(b)(2). Specifically, Petitioner argues that he was never given proper written notice of the alleged violation, that he was not given a fair opportunity to "isolate the various elements of the crime and present facts in his defense," that he "was not allowed to question or cross-examine," and, presumably, that his

8

counsel should have raised these issues at the revocation hearing. Pet'r's Br., pp. 6-7.

Of course, as Petitioner did not raise any Rule 32.1 deficiency at the revocation hearing or on direct appeal, it is clear that any claims related to these supposed deficiencies were waived. See, e.g., United States v. Correa-Torres, 326 F.3d 18, 22 (1st Cir. 2003)(explaining that rights "enumerated in Rule 32.1" may be waived); Montano, 398 F.3d at 1279-80 (explaining procedural default rules); see also Fed. R. Crim. P. 32.1.(b)(2)(allowing for waiver of right to revocation hearing). Regardless, as the Court will explain below, Petitioner has not shown that his revocation hearing did not conform to the requirements of Rule 32.1. Finally, Petitioner has not shown how his counsel's alleged actions in failing to raise alleged Rule 32.1 deficiencies resulted in any prejudice to Petitioner.

a. **Prior Written Notice**

First, Petitioner's contention that he never received notice is affirmatively contradicted by the record. Before Petitioner's initial hearing, Petitioner's probation officer filed a petition for a warrant which recommended the revocation of Petitioner's supervised release. CR 199-007, doc. no. 128. This revocation petition outlined the alleged basis for the warrant and the revocation of Petitioner's supervised release:

> **Violation of mandatory condition - the defendant shall not commit another federal, state, or local crime:** Coleman was arrested by the Morrow, Georgia, Police Department on August 11, 2002. He was charged with theft by shoplifting (felony) and possession of tools in the commission of a crime (felony). Coleman is currently in the Clayton County Jail and a bond has not been set.

Id. at 1. The above-quoted language clearly constituted sufficient notice.

9

It also cannot be seriously argued that Petitioner's counsel did not actually receive the revocation petition. At the hearing, Petitioner's retained counsel explained, "[Petitioner] is going to stipulate that he took [a] [c]amera from the Best Buy in Morrow as alleged and that should satisfy that the shoplifting statute was violated for the purpose of the revocation petition." Revocation Tr., pp. 2-3. It is difficult to explain this statement if Petitioner's counsel never actually received the revocation petition. Moreover, Petitioner also admits in his brief that the accusations of the revocation petition were read to him during his detention and revocation hearings and that his counsel mailed him a copy of the revocation petition after the final hearing. Pet'r's Br., p. 23. In sum, it is clear that Petitioner's counsel received prior written notice, in conformity with Rule 32.1, which she forwarded to Petitioner at the conclusion of the revocation proceedings. It is also abundantly clear that Petitioner was himself aware of the contentions of the revocation petition throughout the proceedings.

Nevertheless, Petitioner apparently contends that the notice was defective because it was sent to his retained counsel, rather than being served on him personally, and that Petitioner's counsel should have objected to the notice on that basis. Pet'r's Br., p. 23. Assuming *arguendo* that Petitioner did not actually receive a personal copy of the revocation petition until after the fact, his contention is meritless. Service of the revocation petition upon retained counsel, prior to Petitioner's revocation hearing and his stipulation to the violation, was sufficient to satisfy Rule 32.1. See, e.g., United States v. Ramos-Santiago, 925 F.2d 15, 17 (1st Cir. 1991), *cert. denied*, 502 U.S. 840. The Government satisfied Rule 32.1's notice requirements; regardless, Petitioner suffered no prejudice.

### b. Disclosure of Evidence

Here, Petitioner suggests that he was not given "opportunity to isolate the various elements of the crime and present facts in his defense." Pet'r's Br., p. 6. However, it is obvious from the revocation hearing transcript that Petitioner and his counsel were aware of the facts surrounding Petitioner's alleged violation--the theft of a camera from its display case in a "Best Buy" retail store. In fact, Petitioner's counsel argued that Petitioner had a professional interest in the camera, pointed out that Petitioner never actually left the store with the camera, and disputed the Government's contention that Petitioner intended to take the camera without paying for it. Revocation Tr., pp. 13-14.[2] The Court asked Petitioner if he wanted to speak to clarify these assertions; he declined to do so. Id. at 15. Thus, even though Petitioner stipulated to the offense, his counsel disputed the merits of the Government's case by presenting Petitioner's version of the events. Petitioner's argument that he was unaware of the evidence is nonsensical.

Of course, given Petitioner's stipulation to the offense, one wonders how any alleged failure to disclose evidence by the Government could have prejudiced him. Moreover, notwithstanding the stipulation, Petitioner's counsel disputed the Government's version of the facts as described above. Regardless, when given the opportunity to present his own version of the events, Petitioner explicitly declined to elaborate on his counsel's statements.

---

[2]Petitioner's counsel advanced Petitioner's incredible argument that he "would have paid for the camera, but before he left the store with it he wanted to make sure it had all the things it was suppose [sic] to have." Id. The evidence at the hearing demonstrated that Petitioner entered a Best Buy restroom with the camera and opened the camera box with a box cutter before he was apprehended by police officers in the restroom. The evidence at the hearing also demonstrated that at the time of his arrest, Petitioner had a key to the display case from which the camera was taken. Id. at 9-10.

11

In light of these facts, Petitioner's conclusory arguments regarding a failure to disclose evidence are inexplicable. At any rate, any claim regarding a failure to disclose evidence was waived, and Petitioner has shown no prejudice.

### c. Opportunity to Present Evidence, Question Adverse Witnesses

As to Petitioner's claim that he "was not allowed to question or cross-examine," the Court notes that Petitioner's counsel was offered the opportunity to cross-examine the Government's witnesses, and did so when she deemed it appropriate to do so. Revocation Tr. pp. 6-7, 12. Petitioner also explicitly declined the Court's invitation to speak in his defense. Id. at 15. Instead, Petitioner relied entirely on his attorney's synopsis of his version of the events. Id. at 13-15. Petitioner's counsel related Petitioner's version of the facts, and asked the Court to consider Petitioner's job history during the period of his supervised release. Id. Quite simply, Petitioner was afforded a chance to appear, to present evidence, and to question adverse witnesses as required by Rule 32.1. Furthermore, absent some showing that his stipulation to the offense or any alleged waiver of his Rule 32.1 rights was involuntary, Petitioner has shown no prejudice and the matter merits no further discussion.

### 2. Stipulation to the Violation

Of course, Petitioner contends that his counsel acted ineffectively by waiving his Rule 32.1. rights and stipulating to the alleged violation; he also blames the Court for allegedly failing to ensure that the waiver and stipulation were "knowing and voluntary." Pet'r's Br., pp. 6-7. However, as demonstrated above, Petitioner has not shown that his revocation hearing did not comply with Rule 32.1. Regardless, Petitioner did knowingly and

12

voluntarily stipulate to the offense and thereby waived any Rule 32.1 defect in the proceeding. The Court specifically asked Petitioner if he wished to stipulate to the offense; he answered affirmatively. Revocation Tr., p. 3.

In the informal setting of a revocation hearing, the Court had no obligation to conduct a formal exchange with Petitioner, such as that in a Rule 11 voluntariness colloquy. See Corre-Torres, 326 F.3d at 23; see also United States v. Pelensky, 129 F.3d 63, 67 (2d Cir. 1997)(agreeing with Fourth, Fifth, Eighth, and Ninth Circuits that a voluntariness colloquy is unnecessary in revocation proceeding). The issue is simply whether the record reflects that the stipulation and any waiver were knowing and voluntary. See, e.g., United States v. Tapia-Escalera, 356 F.3d 181, 184 (1st Cir. 2004). Here, Petitioner's attorney explained to the Court that Petitioner wished to stipulate to the violation; the Court asked Petitioner is this was what he wanted to do, and Petitioner agreed. Revocation Tr., pp. 2-3. When given another opportunity to speak, Petitioner declined. Id. at 15. Petitioner offers nothing in support of his bald contention in this collateral proceeding that the stipulation was not voluntarily entered, and his contention is belied by the record. The matter merits no further discussion.

### 3. Sufficiency of the Evidence

Finally, Petitioner also contends that the evidence used to revoke his supervised release was insufficient. However, the claim utterly lacks merit. Accordingly, even assuming this claim survives the procedural bar or can be couched as an ineffective assistance claim, Petitioner is not entitled to relief. The Court's decision was supported by a preponderance of the evidence, even without taking into account Petitioner's stipulation.

13

18 U.S.C. § 3583(e)(3)(establishing preponderance of the evidence as burden of proof in revocation proceeding).

The revocation petition charged that Petitioner had committed felony shoplifting under Georgia law. To prove this offense, the Government had only to show that Petitioner concealed or took possession of merchandise "with the intent of appropriating [it] to his own use without paying for the same," and that the camera was worth more than $300.00. O.C.G.A. § 16-8-14. The Government satisfied its burden on all fronts. First, the Government demonstrated that the camera Petitioner stole was worth $ 1,276.00. Revocation Tr., p. 4. The Court then heard extended testimony from the arresting officer in Petitioner's case, who described arresting Petitioner in the Best Buy restroom and finding the camera, a box cutter, the camera's box cut into several pieces, and a key to the camera's display case, all in Petitioner's possession. Id. at 7-12. In addition, at the hearing the Government introduced a statement from a Best Buy employee, the box cutter Petitioner used to open the camera box, the key Petitioner used to open the display case, and a part of the opened camera box. Id. at 10-11. Based on this wealth of testimonial and physical evidence, the preponderance standard applicable to revocation hearings was clearly met. There was no error, and Petitioner has not shown how he was prejudiced by any action of the Court, the Government, or his counsel.

### 4. Illegal Sentence

Finally, Petitioner argues that the Court erred when it sentenced him to consecutive sentences, because his initial sentences as to Counts One and Eighteen (to which he pled guilty) were to be served concurrently. In support of this claim, Petitioner alleges that this

sentence violates his plea agreement, is illegal, and that his counsel should have argued as much. The Court is unconvinced.

First, Petitioner's assertion that his sentence violates his plea agreement is a *non sequitur*. Petitioner's plea agreement contained no promises as to whether Petitioner's sentences would run concurrently or as to how Petitioner would be sentenced upon a violation of the conditions of his supervised release. See CR 199-007, doc. no. 60. Nor should it have. At any rate, it is unclear to the Court how Petitioner's plea agreement bears any relationship to the revocation of his supervised release, a separate proceeding.

Most importantly, the consecutive sentences, for a total imprisonment of 36 months, do not violate the law. Upon revocation, the Court may "require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time served on postrelease supervision." 18 U.S.C. § 3583(e)(3). The Court's imposition of sentence clearly fell within the authorized statutory range. Upon revocation of concurrent terms of supervised release, the Court has discretion to sentence the defendant to consecutive terms of imprisonment. United States v. Quinones, 136 F.3d 1293, 1294-95 (11th Cir. 1998)(*per curiam*). In sum, Petitioner has not shown that the Court committed any sentencing error or that his counsel was ineffective in any way, and his remaining assertions lack merit. The instant petition should be denied.

### III. CONCLUSION

For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that

15

Petitioner's § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Government. The Court also **REPORTS** and **RECOMMENDS** that Petitioner's motions for discovery and an evidentiary hearing (doc. nos. 11, 12) be **DENIED**.

SO REPORTED and RECOMMENDED this 20th day of May, 2005, at Augusta, Georgia.

*/s/ W. Leon Barfield*
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# United States District Court
## Southern District of Georgia

ATTORNEYS SERVED:

Carlton W. Coleman Sr., Pro-se
Amy Lee Copeland, Esq.

CASE NO: CV103-169
DATE SERVED: May 20, 2005
SERVED BY: Cindy Reynolds CR

☐ Copy placed in Minutes
☐ Copy given to Judge
☑ Copy given to Magistrate